1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                FOR THE EASTERN DISTRICT OF CALIFORNIA

10   SHAYNE KYLE TERRY,

11             Petitioner,              No. CIV S-05-1866 LKK EFB P

12        vs.

13   WARDEN OF FOLSOM STATE
     PRISON,
14
              Respondent.              FINDINGS AND RECOMMENDATIONS
15   _____/

16        Petitioner is a state prisoner proceeding through counsel with an application for a writ of

17   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner was convicted in 2001 in two separate

18   criminal cases of stalking in violation of a temporary restraining order and threatening to commit

19   a crime resulting in death or great bodily injury, and kidnapping and corporal injury to a

20   cohabitant.  He seeks relief on the grounds that his combined sentence in both cases constitutes

21   cruel and unusual punishment.  Upon careful consideration of the record and the applicable law,

22   the undersigned recommends that petitioner's application for habeas corpus relief be denied.

23   ////

24   ////

25   ////

26   ////

1

I.        **Procedural and Factual Background**

        In its unpublished opinion affirming petitioner's two judgments of conviction and his sentence on appeal[1], the California Court of Appeal for the Third Appellate District provided the following summary:

> This appeal involves two separate incidents. In the first, Placer County case No. 62-15746, defendant entered pleas of no contest to one felony count of stalking in violation of a restraining order (Pen.Code, § 646.9, subd. (b); unspecified statutory references that follow are to the Penal Code) and to an unrelated misdemeanor count of making criminal threats (§ 422).  He also entered a *Harvey* waiver to a misdemeanor count of vandalism (§ 594), and admitted a prior conviction for robbery.
>
> On June 8, 2001, shortly before he was to be sentenced in that case, defendant attacked his girlfriend, and charges were filed in a second case, Placer County case No. 62-21948.  A jury convicted defendant of kidnapping (§ 207, subd. (a)) and inflicting corporal injury on a cohabitant (§ 273.5), but acquitted defendant of a third count of making criminal threats (§ 422).
>
> The trial court sentenced defendant to an aggregate prison term of 28 years for both cases.
>
> On appeal, defendant contends that the court erred in refusing to permit him to withdraw his plea of no contest in the first case and in admitting certain evidence at trial in the second.  He asserts that references to the prosecutor as "the People" violated his constitutional rights.  Finally, he challenges the sentence imposed, contending that the court should have granted his motion to strike his prior conviction (*See People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*) and that a sentence of 28 years constitutes cruel and unusual punishment.  None of these claims has merit, and we therefore affirm the judgment.
>
> **Facts and Proceedings**
>
> According to the factual basis for defendant's plea in case No. 62-015746, defendant was "not particularly pleased" with custody orders in his pending dissolution case.  He telephoned his ex-wife, Wendy, at her job and "made some derogatory and threatening statements . . . ."  He then went to where Wendy worked, yelled at her, and broke some items.  In an unrelated matter, defendant made threatening comments to a baby sitter.  The first amended

[1] Notice of Lodging Documents on December 27, 2005, Dckt. No. 11, Resp.'s Lodg. Doc. No. 1 (hereinafter Opinion), at 1-7.

information charged defendant with two felony counts of making criminal threats (with count one relating to Wendy and count two relating to the baby sitter), and one misdemeanor count of vandalism (count three).  The information also alleged that defendant had a prior felony conviction for robbery.

Pursuant to a plea agreement, count one was amended to charge stalking in violation of a restraining order and count two was reduced to a misdemeanor.  Under this agreement, defendant faced a total maximum sentence of nine years.

Judge Roeder noted that defendant "would be making a motion under . . . *Romero* requesting the Court dismiss the prior strike." The court advised that if it struck the conviction, it "would nevertheless impose the maximum term of five years in state prison allowed by law."  The court outlined possible probation conditions, and noted that any grant of probation would include a requirement that defendant participate in counseling, including "a 52-week batterer's program and also some pretty heavy anger control counseling."

After being appropriately advised, defendant entered pleas of no contest to both charges, entered a *Harvey* waiver on count three, and admitted the prior robbery conviction.

The court scheduled sentencing for June 22, 2001, and cautioned defendant to keep his interview with the probation department and to appear for sentencing.  The court also ordered that defendant have no contact with the victim in count two or the witness to the incident with Wendy, and that defendant stay away from Wendy's workplace.  The court stated: "And as it relates to Wendy Terry, you shall have only contact peaceably under the terms of the family law court orders.  It should be of no surprise to you and I'm sure [your attorney] has suggested to you that you don't need to screw up because you're going to be – you're presently the subject of the strike.  If you screw up between now and sentencing, that's going to be pretty heavy.  So don't screw up between now and sentencing."

The prosecutor asked, "[I]f he violates these orders that you put in place, that wouldn't be grounds for withdrawing his plea at sentencing; is that correct?"  The court agreed, noting "[defendant] understands the rules.  His plea is for nine years and see what happens between now and sentencing."

Apparently undeterred by his upcoming sentencing hearing, defendant attacked his pregnant girlfriend, Tracy, giving rise to charges in case No. 62-21948 of kidnapping, inflicting corporal injury on a cohabitant, and making criminal threats.

////

3

Judge Couzens presided over the trial in that case.  The evidence established that defendant became very angry with his girlfriend while they were driving in a car and, at one point, tried to push her out of the moving vehicle.  When the car stopped, Tracy ran out of the car and into a gas station.  She was crying and frightened, and asked the manager if she could go into the office because her boyfriend had been hitting her.  She ran into the office, where another employee was working.  They closed the door, but defendant, who was chasing Tracy, hit and kicked the door to try to open it.  He was screaming, "Give me my shit back."

Defendant went out of the store briefly, but returned, manipulated the office door with an implement, and opened the door.  He grabbed Tracy and dragged her through the store while Tracy screamed for help.  At one point, Tracy was on the floor of the store yelling that she did not want to go, while defendant tried to pick her up.  Tracy was hysterical.  Defendant pushed Tracy out of the store, grabbed her by the hair, and pushed her into the car on the driver's side.  Tracy tried to get out from the passenger's side but was unsuccessful.

Defendant drove away with the victim and headed to a scheduled appointment at the DeWitt Center.  When defendant went inside the building, Tracy ran into a nearby clinic.  A nurse described her as very distraught and panicked.  She was crying and asking for help.  She said her boyfriend had slammed her head in the car, punched her several times in the head, and pulled out clumps of her hair.  Tracy's face had localized redness as if she had been slapped or punched.  Tracy told the nurse that defendant had beaten her before and had also beaten his ex-wife.  At Tracy's request, the nurse called the police.

A sheriff's officer took pictures of Tracy's injuries.  She had a "pretty substantial injury" on her forehead, a slight cut near her wrist, and was developing bruises on her arms.

Another officer took Tracy's statement.  He too described her as very upset and crying.  Tracy said that defendant had hit her twice in the face before she left the car and ran into the gas station.  When defendant opened the office door, he grabbed Tracy by her hair and pulled her out of the store against her will.  He put her in the car and slammed her head against the steering wheel.  En route to Auburn, defendant hit Tracy 10 times in the face and head, and twice on the chest.  He threatened to kill her, warning that he was "going to bury [her]."

Tracy told the officer that one month earlier, defendant had pushed her down.

Defendant's ex-wife, Wendy, was questioned about prior incidents of domestic violence committed by defendant.  She denied

4

previous reports and minimized some of the episodes, but acknowledged that defendant had been violent with her during their marriage.

Tracy also testified at trial, but recanted the statements she had made to the sheriff's officer and nurse. She stated that defendant was calm at all times and that it was she who was angry and upset because she thought defendant had resumed his relationship with his ex-wife. She wanted to punish defendant for this betrayal and made up the entire story. She said she had gone into the gas station threatening to kill herself, but defendant calmed her down and gently walked her back to the car. She said that defendant never hurt her or touched her aggressively, and that she was unaware of any violence between defendant and his ex-wife.

A therapist described the battered women's syndrome and explained that many victims of domestic violence minimize their situation and make excuses for their batterers. They are often reluctant to testify against the abusers and reluctant to report abusers to law enforcement.

Defendant challenged the syndrome evidence and the reliability of the eyewitnesses' recollections. He also offered an alternative necessity defense, suggesting that he acted to prevent Tracy from killing herself.

The jury convicted defendant of kidnapping and inflicting corporal injury on a cohabitant, but it acquitted defendant of making criminal threats. Judge Roeder denied defendant's motion to strike his prior conviction, and defendant was ultimately sentenced to an aggregate sentence of 28 years in the two cases.

## II.   Analysis

### A.  Standards for a Writ of Habeas Corpus

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

////

1    Under section 2254(d)(1), a state court decision is "contrary to" clearly established

2  United States Supreme Court precedents "if it 'applies a rule that contradicts the governing law

3  set forth in [Supreme Court] cases', or if it 'confronts a set of facts that are materially

4  indistinguishable from a decision'" of the Supreme Court and nevertheless arrives at a different

5  result. *Early v. Packer*, 537 U.S. 3, 8 (2002) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-406

6  (2000)).

7    Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas

8  court may grant the writ if the state court identifies the correct governing legal principle from the

9  Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's

10  case. *Williams*, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because

11  that court concludes in its independent judgment that the relevant state-court decision applied

12  clearly established federal law erroneously or incorrectly. Rather, that application must also be

13  unreasonable." *Id.* at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (it is "not

14  enough that a federal habeas court, in its independent review of the legal question, is left with a

15  'firm conviction' that the state court was 'erroneous.'")

16    The court looks to the last reasoned state court decision as the basis for the state court

17  judgment. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002). Where the state court reaches a

18  decision on the merits but provides no reasoning to support its conclusion, a federal

19  habeas court independently reviews the record to determine whether habeas corpus relief is

20  available under section 2254(d). *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).

21  ////

22  ////

23  ////

24  ////

25  ////

26  ////

**B.  Cruel and Unusual Punishment**

In the petition before this court, petitioner alleges that his sentence of 28 years in prison for both of the cases against him constitutes cruel and unusual punishment because it "exceeds punishment for other more serious crimes."  Pet. at 5.[2]  The California Court of Appeal rejected this claim, concluding that petitioner's sentence violated neither state law nor the Eighth Amendment.  The court reasoned as follows:

> Defendant contends that the imposed sentence of 28 years violates constitutional proscriptions against cruel and unusual punishment. He reiterates his claim that there is no evidence to support his conviction for stalking, and argues that it is cruel and unusual punishment for his prison sentence "to include time for a crime which [he] did not assuredly commit."  He asserts that he is "an exceptionally young man, and has much to offer society as worker and as a parent."  And, in another one-sentence argument, he asserts that "the punishment in this case far exceed[s] the punishment for other more serious crimes."  Defendant's constitutional claim is meritless.

> A punishment may violate the California Constitution if it is so disproportionate to the crime for which it is imposed "that it shocks the conscience and offends fundamental notions of human dignity."  (*In re Lynch* (1972) 8 Cal.3d 410, 424.)  In undertaking this analysis, courts examine the nature of the offense and/or the offender, compare the punishment with the penalty for more serious crimes in the same jurisdiction, and compare the punishment to the penalty for the same offense in different jurisdictions.  (*Id.* at pp. 425-426.)  To demonstrate that a sentence is unconstitutionally cruel or unusual, a defendant must make a factual showing in the trial court under one or more of these three tests.

> Defendant did not offer any evidence comparing the penalty for the charged crimes with other offenses in California or similar offenses in other jurisdictions.  We therefore limit our analysis to an examination of the offense and offender.  As we have already discussed, defendant's plea of no contest to the stalking conviction precludes any challenge to the evidentiary basis for that plea.

> Defendant was convicted of stalking, kidnapping and inflicting corporal injury on a cohabitant.  These are, needless to say, very

---

[2]  Petitioner's original habeas petition included three additional claims.  However, the July 26, 2006 amended petition, which is the operative pleading in this matter, contains only petitioner's challenge to his sentence.

1
2
3
4

> serious offenses, and his attack on his girlfriend was particularly
> vicious. The prison term imposed cannot be deemed excessive or
> grossly disproportionate. It does not shock the senses, and
> therefore does not constitute cruel or unusual punishment under
> the California Constitution. (*People v. Lynch, supra*, 8 Cal.3d at p.
> 424; *People v. Dillon* (1983) 34 Cal.3d 441, 487, fn. 38; *see
> People v. Gonzales* (2001) 87 Cal.App.4th 1, 17.)

5
6
7
8
9
10

> Defendant's claim is no more successful under the federal
> Constitution. The United States Constitution prohibits cruel and
> unusual punishment by a different standard, limiting its analysis in
> noncapital cases to a "'narrow proportionality principle,'" i.e., "'it
> forbids only extreme sentences that are "grossly disproportionate"
> to the crime.'" (*Ewing v. California* 538 U.S. 11, ___, ___, [155
> L.Ed.2d 108, 177, 119 (*lead opn. of O'Connor, J.*); id. at p. 108
> [155 L.Ed.2d at p. 127] (*dis. opn. of Bryer, J.*).) For the reasons
> just stated, a term of 28 years under the three strikes law is not
> grossly disproportionate to defendant's offenses. This sentence is
> not cruel and unusual punishment under the Eighth Amendment.

11  Opinion at 24-26.

12          Subsequent to the decision of the California Court of Appeal, petitioner presented his

13  claim of cruel and unusual punishment to the California Supreme Court in a petition for review,

14  in which he also claimed that California's determinate sentencing scheme violates the Sixth and

15  Fourteenth Amendments to the United States constitution. Resp.'s Lodg. Doc. No. 4. The

16  petition for review was denied, as follows:

17
18
19

> Petition for review denied without prejudice to any relief to which
> defendant might be entitled after this court determines in *People v.
> Black*, S126182, and *People v. Towne*, S125677, the effect of
> *Blakely v Washington* (2004) ___ U.S. ___ S.Ct. 2531, on
> California law.

20  Resp.'s Lodg. Doc. No. 5. Because the California Supreme Court did not address on the merits

21  petitioner's claim that his sentence constitutes cruel and unusual punishment, this court will

22  analyze the decision of the California Court of Appeal as the relevant state-court determination

23  under AEDPA. *Avila*, 297 F.3d at 918 (the habeas court must review the "last reasoned

24  decision" by a state court); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000)

25  (same).

26  ////

8

1    ### 1. __Applicable Law__

2    The United States Supreme Court has held that the Eighth Amendment includes a

3    "narrow proportionality principle" that applies to terms of imprisonment.  *See Harmelin v.*

4    *Michigan*, 501 U.S. 957, 996 (1991) (Kennedy, J., concurring).  *See also Taylor v. Lewis*, 460

5    F.3d 1093, 1097 (9th Cir. 2006).  However, successful challenges in federal court to the

6    proportionality of particular sentences are "exceedingly rare."  *Solem v. Helm*, 463 U.S. 277,

7    289-90 (1983).  *See also Ramirez v. Castro*, 365 F.3d 755, 775 (9th Cir. 2004).  "The Eighth

8    Amendment does not require strict proportionality between crime and sentence.  Rather, it

9    forbids only extreme sentences that are 'grossly disproportionate' to the crime."  *Harmelin*, 501

10   U.S. at 1001 (Kennedy, J., concurring) (citing *Solem v. Helm*).  In *Lockyer v. Andrade*, the

11   United States Supreme Court found that in addressing an Eighth Amendment challenge to a

12   prison sentence, the "only relevant clearly established law amenable to [AEDPA's] 'contrary to'

13   or 'unreasonable application of' framework is the gross disproportionality principle, the precise

14   contours of which are unclear and applicable only in the 'exceedingly rare' and 'extreme' case."

15   538 U.S. at 73 (*citing Harmelin*, 501 U.S. 957; *Solem*, 463 U.S. 277; and *Rummel v. Estelle*, 445

16   U.S. 263, 272 (1980)).  In *Andrade*, the Supreme Court held that it was not an unreasonable

17   application of clearly established federal law for the California Court of Appeal to affirm a

18   "Three Strikes" sentence of two consecutive 25 year-to-life imprisonment terms for a petty theft

19   with a prior conviction involving theft of $150.00 worth of videotapes.  538 U.S. at 75.  In a

20   subsequent case, the Supreme Court held that a "Three Strikes" sentence of 25 years-to-life in

21   prison imposed on a grand theft conviction involving the theft of three golf clubs from a pro shop

22   was not grossly disproportionate and did not violate the Eighth Amendment.  *Ewing v.*

23   *California*, 538 U.S. 11, 29 (2003).  In *Harmelin*, the petitioner received a sentence of life

24   without the possibility of parole for possessing 672 grams of cocaine.

25   In assessing the compliance of a non-capital sentence with the proportionality principle, a

26   reviewing court must consider "objective factors" to the extent possible.  *Solem*, 463 U.S. at 290.

1   Foremost among these factors are the severity of the penalty imposed and the gravity of the

2   offense.  "Comparisons among offenses can be made in light of, among other things, the harm

3   caused or threatened to the victim or society, the culpability of the offender, and the absolute

4   magnitude of the crime."  *Taylor*, 460 F.3d at 1098.[3]

5                   **2.**  **Discussion**

6           The court finds that in this case petitioner's sentence does not fall within the type of

7   "exceedingly rare" circumstance that would support a finding that his sentence violates the

8   Eighth Amendment.  Petitioner was sentenced to twenty-eight years in prison pursuant to the

9   requirements of California's Three Strikes Law for recidivist offenders on serious charges of

10  kidnapping, corporal injury of a cohabitant, stalking, and threatening to commit a crime resulting

11  in death or great bodily injury.  Lodg. Doc. No. 9 at 169-70; Lodg. Doc. No. 10 at 23-24; Lodg.

12  Doc. No. 11 at 210-12; Lodg. Doc. No. 12 at 630-31.  The sentence imposed is certainly a

13  significant penalty.  However, when measured by comparison to the cases cited above,

14  petitioner's sentence does not rise to the level of cruel and unusual punishment.  In light of the

15  sentences affirmed in *Harmelin*, *Andrade,* and *Ewing*, petitioner's sentence of twenty-eight years

16  under the circumstances of this case is not grossly disproportionate.  *See also Ewing*, 538 U.S. at

17  _____

18          [3]  As noted in *Taylor*, the United States Supreme Court has also suggested that reviewing
    courts compare the sentences imposed on other criminals in the same jurisdiction, and also
19  compare the sentences imposed for commission of the same crime in other jurisdictions.  460
    F.3d at 1098 n.7.  However,

20
            consideration of comparative factors may be unnecessary; the *Solem* Court "did
21      not announce a rigid three-part test."  *See Harmelin*, 501 U.S. at 1004, 111 S.Ct.
        2680 (Kennedy, J., concurring). Rather, "intrajurisdictional and interjurisdictional
22      analyses are appropriate only in the rare case in which a threshold comparison of
        the crime committed and the sentence imposed leads to an inference of gross
23      disproportionality."  *Id.* at 1004-05, 111 S.Ct. 2680; see also *Rummel v. Estelle*,
        445 U.S. 263, 282, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980) ("Absent a
24      constitutionally imposed uniformity inimical to traditional notions of federalism,
        some State will always bear the distinction of treating particular offenders more
25      severely than any other State.").

26  *Id.*

                                        10

1  25 ("recidivism is a legitimate basis for increased punishment.")

2      Because petitioner does not raise an inference of gross disproportionality, this court need

3  not compare petitioner's sentence to the sentences of other defendants in other jurisdictions.

4  This is not a case where "a threshold comparison of the crime committed and the sentence

5  imposed leads to an inference of gross disproportionality." *Solem*, 463 U.S. at 1004-05.  The

6  state court's reliance on *Ewing* and its determination that petitioner's sentence did not violate the

7  Eighth Amendment was not an unreasonable application of the Supreme Court's proportionality

8  standard.  Accordingly, petitioner's claim for relief should be denied.

9  **III.    Conclusion**

10      Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ

11  of habeas corpus be denied.

12      These findings and recommendations are submitted to the United States District Judge

13  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one

14  days after being served with these findings and recommendations, any party may file written

15  objections with the court and serve a copy on all parties.  Such a document should be captioned

16  "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

17  within the specified time may waive the right to appeal the District Court's order.  *Turner v.*

18  *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In

19  his objections petitioner may address whether a certificate of appealability should issue in the

20  event he files an appeal of the judgment in this case.  *See* Rule 11, Federal Rules Governing

21  Section 2254 Cases (the district court must issue or deny a certificate of appealability when it

22  enters a final order adverse to the applicant).

23  DATED:  September 13, 2010.

24  EDMUND F. BRENNAN

25  UNITED STATES MAGISTRATE JUDGE

26

11